UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-CV-62260-SINGHAL/VALLE

CHAD PAUL LYNN FATONE,

      Plaintiff,

  v.

KILOLO KAJAKAZI,[1] Commissioner of
Social Security Administration,

      Defendant.

_____

## **REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

      THIS MATTER is before the Court on Plaintiff Chad Paul Lynn Fatone's Motion for

Summary Judgment (ECF No. 28-1) and Defendant Kilolo Kajakazi's, Acting Commissioner

of the Social Security Administration, Motion for Summary Judgment (ECF No. 29) (together,

the "Motions").  U.S. District Judge Raag Singhal has referred the Motions to the undersigned

for a Report and Recommendation.  (ECF No. 26).

      Accordingly, after due consideration of the record and the parties' briefs, including

Defendant's Response (ECF No. 30), Plaintiff's Reply (ECF No. 31), and being otherwise duly

advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for

Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**,

and the Administrative Law Judge's Decision ("ALJ Decision") be **AFFIRMED** for the

reasons set forth below.

_____

[1]  Kilolo Kijakazi has been appointed as Acting Commissioner of Social Security.
Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted
for Andrew Saul as Defendant in this case.

## I.      PROCEDURAL HISTORY

This suit involves Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act").  Plaintiff applied for benefits in January 2018, alleging a disability onset date of August 31, 2016.  (R. 15).[2] Plaintiff's claim was denied initially and again upon reconsideration.  (R. 100-03, 107-114). Plaintiff requested a hearing, which was held on February 27, 2020 before ALJ Wendy Hunn. (R. 32-63, 115-16, 132-37).  Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") both testified at the hearing.  (R. 32-63).  On April 10, 2020, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 15-25).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-3); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.      STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x. 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla," and means only "'such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 20, 21).

conclusion.'"  *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x. at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance").  A court, however, "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ].'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted).  Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Within this narrow role, however, courts do not act as automatons.  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Id.*

To qualify for benefits, a claimant must be disabled within the meaning of the Act.  *See* 42 U.S.C. § 423 (standard for DIB).  A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)  Is the person presently unemployed?
(2)  Is the person's impairment severe?
(3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?

(4)     Is the person unable to perform his or her former occupation?

(5)     Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4) (evaluation process for DIB).  An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004).  At Step 4, the ALJ must assess: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments.  20 C.F.R. § 404.1545(a).  The ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case.  20 C.F.R. § 404.1520(e).  The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239.  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.*  The ALJ

may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III.   THE HEARING RECORD

#### A.   Plaintiff's Background and Testimony

Plaintiff was born on June 11, 1974 and was 45 years old at the time of the administrative hearing. (R. 35, 209-10). Plaintiff has a high school equivalency degree, some college, and obtained a certification in diesel technologies. (R. 35-36). Plaintiff's past relevant work included work as a machine maintenance technician, gas station attendant, and sheet metal worker. (R. 37-41).

Plaintiff testified that he suffered from mental health issues since childhood and had been diagnosed with bipolar disorder. (R. 42, 548). Plaintiff had been in and out of facilities "his whole life." *Id.* He described suffering from depression, lack of motivation, difficulty sleeping, auditory hallucinations, suicidal ideations, mood swings, uncontrollable anger, and being Baker Acted in the past. (R. 42-43, 48-50, 260). At the time of the hearing, Plaintiff was receiving in-patient mental health treatment at Calvary House for Men and had been there for 4.5 months. (R. 35, 43). Previously, Plaintiff had obtained in-patient treatment for mental health/drug and alcohol abuse at Jerome Golden Center ("JGC") and Faith Farm. (R. 41-47). Plaintiff testified that he took medications, but sometimes the side effects made him "feel 10 times worse." (R. 50). Plaintiff also admitted not taking his medications when he felt better. *Id.* Lastly, Plaintiff testified about his history of drug use. (R. 43, 44-47).

### B.      Vocational Expert's Testimony

According to the VE, Plaintiff's past relevant work included work as a machine maintenance technician (a heavy job with an SVP of 7), gas station attendant (a light job with an SVP of 3, but performed as medium), and a sheet metal worker (a medium job with an SVP of 7).  (R. 58-59).

The ALJ posed three hypotheticals to the VE.  First, the ALJ asked the VE whether an individual of Plaintiff's age, education, and previous work experience, who could perform light work but was limited to simple, routine, repetitive tasks and occasional interaction with coworkers, supervisors, and the general public, could perform Plaintiff's past relevant work.  (R. 59).  In response, the VE testified that such an individual could not perform any of Plaintiff's past work.  *Id*.  The ALJ then asked the VE whether that individual could perform other jobs in the national economy.  *Id*.  The VE testified that such an individual could work as a housekeeper, towel folder, and garment sorter, all light jobs with an SVP of 2.  (R. 59-60).

Next, the ALJ asked the VE whether any of the above-mentioned jobs would remain available if the individual were further limited to only less than occasional or incidental face-to-face interactions with the public.  (R. 60).  The VE testified that those three jobs would remain available.  *Id*.

Lastly, the ALJ asked the VE whether the individual in the first hypothetical could perform other jobs in the national economy if he was limited to sedentary work (instead of light work).  *Id*.  The VE testified that such an individual could work as a document preparer, ticket checker, and a lens inserter, all sedentary jobs with an SVP of 2.  (R. 60-61).

Upon further questioning by Plaintiff's counsel, the VE testified that if the hypothetical individual described above needed unscheduled breaks (in addition to scheduled breaks) during

the day, and had to be off task more than 10% of the time, then that individual would be precluded from all work.  (R. 62).  Additionally, if the individual was absent from the workplace an average of one month every year in addition to normal vacations, that individual would be precluded from all work.  (R. 62-63).

## IV.    THE ALJ'S DECISION

After reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from August 31, 2016, the alleged onset date, through March 31, 2017, the date last insured." (R. 16, 25).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between his alleged onset date (August 31, 2016) and his date last insured (March 31, 2017). (R. 17).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, polysubstance dependence, and obesity.  (R. 17).  Conversely, the ALJ found Plaintiff's anxiety and post-traumatic stress disorder were not severe mental impairments.[3]  *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (R. 18).

Before proceeding to Step 4, the ALJ determined Plaintiff's RFC.  Specifically, the ALJ found that Plaintiff had the residual functional capacity to perform light work, but was limited to "simple routine repetitive tasks, with only occasional interaction with coworkers and supervisors, and only occasional interaction with the general public." (R. 20).

In reaching this conclusion at Step 4, the ALJ considered Plaintiff's symptoms and the

---

[3] Plaintiff does not challenge the ALJ's severity findings as to his other mental impairments or physical condition.

extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence.  *Id.*  Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 21).  Nonetheless, the ALJ found that Plaintiff was unable to perform past relevant work and proceeded to Step 5.  (R. 21-24).

At Step 5, the ALJ found that there were other jobs in the national economy that Plaintiff could perform, such as housekeeper, towel folder, and garment sorter (all unskilled, light work with an SVP of 2).  (R. 24-25).  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  (R. 25).

## V.    DISCUSSION

Plaintiff raises two primary arguments on appeal.  First, Plaintiff argues that the ALJ's hypotheticals to the VE were incomplete because the hypotheticals did not address Plaintiff's inability to work "without excessive absences" due to "extended [in-patient] stays at Faith Farm and Calvary House, as well as the psychiatric admission at the [JGC] and St. Mary's INH." (ECF No. 28-1 at 14-18).  Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility.  *Id.* at 18-21.  As discussed below, the undersigned finds that substantial evidence supports the ALJ's Decision and that the ALJ applied the proper legal standards.  Accordingly, the ALJ's Decision should be affirmed.

### A.    The ALJ's RFC Determination and Hypotheticals to the VE Were Proper

Plaintiff argues that the ALJ's hypotheticals to the VE are incomplete because the ALJ did not address Plaintiff's inability "to work on a continuous basis without excessive absences."

8

(ECF No. 28-1 at 15).  Implicit in Plaintiff's argument is a challenge to the ALJ's underlying RFC assessment, on which the hypotheticals were based.  As discussed below, however, the ALJ's hypotheticals were based on an RFC assessment that was supported by substantial evidence.  Accordingly, Plaintiff's argument fails.

      *1.  Substantial Evidence Supports the ALJ's RFC Determination*

A claimant's RFC is the most a claimant can do despite the limitations caused by his impairments.  20 C.F.R. § 404.1545(a)(1).  Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An RFC determination is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. *Id*.  Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources on the issue. *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding ALJ's RFC finding that accounted for medical opinions not specifically discussed by the ALJ).

Based on her review of the record, the ALJ determined that Plaintiff had the RFC to perform light work with certain nonexertional limitations.  (R. 20-23).  Specifically, the ALJ limited Plaintiff to simple, routine, repetitive tasks, with only occasional interaction with coworkers, supervisors, and the general public.  *Id*. at 20.  In determining Plaintiff's RFC, the ALJ considered Plaintiff's sporadic treatment records, non-compliance with his treatment regimen, improvement with medication, overall longitudinal history, the opinions of the State Agency medical consultants, and Plaintiff's activities of daily living.  *Id*. at 20-23.  Each basis is addressed below.

Regarding Plaintiff's treatment history, the ALJ noted "the absence of any [medical]

treatment for any impairment for several years prior to the alleged onset date and no evidence in the year prior [to the onset date]." *Id*. at 21. A review of the record confirms Plaintiff's treatment from May 2010 through February 2013, and then not again until August 2016. *See generally* (Exs. 1F-7F, 12F, 25F, 32F) (R. 329-505, 567-603, 885-908, 1085-1101). Moreover, as the ALJ noted, although there are "numerous records in this file," the relevant timeframe for consideration of Plaintiff's DIB claim is "very narrow," from August 31, 2016 (Plaintiff's alleged onset date) to March 31, 2017 (Plaintiff's date last insured). (R. 21). The ALJ then reviewed Plaintiff's treatment records at JGC for the relevant—and admittedly narrow—period.

In reviewing Plaintiff's mental health treatment records for the relevant period, the ALJ noted that the records "established a very short treating history with sporadic visits and noncompliance issues, including not attending follow up visits within the recommended timeframes, not taking medication as prescribed, and not abstaining from substance uses." *Id.* As the ALJ noted, although Plaintiff was voluntarily admitted to JGC from August 29, 2016 to September 7, 2016 for mental health treatment, the Discharge Summary reflected that Plaintiff had not taken antidepressant medications for two years before his admission to JGC and was drinking one pint of vodka daily and using heroin to self-medicate.[4] *Id.*; (R. 595). The Discharge Summary also noted that Plaintiff responded well to group therapy and medication without adverse side effects, and concluded that Plaintiff did "not meet the criteria for further psychiatric inpatient stabilization as he is not gravely disabled or a danger to self/others due to mental illness at this time . . . [and] does not appear to be a risk for self-neglect given that he

---

[4] By way of background, Plaintiff was voluntarily admitted to JGC due to "[his] complaint of fear of blowing out his brain or hurting someone else," and described precipitating factors as "financial hardship, drug and alcohol addiction, and family issues." (R. 595). The Discharge Summary states that Plaintiff was admitted for "stabilization of an affective decline . . . in the context of homelessness and unemployment related to substance abuse." *Id.*

appears to be capable and able to provide for his own basic survival needs in the home and community . . . ."  (R. 595).

The ALJ also considered Plaintiff's improvement with medication during this time. (R. 21-22).  *See* 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (noting that ALJ may consider the type, dosage, effectiveness, and side effects of any medication to alleviate claimant's pain or other symptoms).  Although Plaintiff was initially prescribed Abilify and Zoloft, these medications were adjusted for better results and less side effects.  (R. 21-22).  A September 2016 JGC treatment note reflects that Tegretol reduced Plaintiff's cravings for alcohol/drugs and anxiety, Cogentin relieved his jaw tightness, and Clonidine helped him sleep better.  (R. 22, 587).  At Plaintiff's next visit to JGC in December 2016, Plaintiff reported that the medications were working well with no side effects, that he had been discharged from Stepping Stones (a substance treatment program), and denied using drugs/alcohol, psychosis, or suicidal/homicidal ideation.  (R. 22, 584).  Based on this evidence, the ALJ concluded that Plaintiff "did very well from a mental health standpoint" when he followed his treatment regimen.  (R. 22).

The ALJ also considered Plaintiff's non-compliance with treatment, including "not attending follow up visits within the recommended time frames, not taking medications as prescribed, and not abstaining from substance uses."  *Id*. at 21.  For example, although Plaintiff was advised at his December 2016 visit to return to JGC in one month, (R. 22, 584), Plaintiff did not return until three months later in March 2017.  (R. 22, 579).  Then, at the March visit, Plaintiff was advised to return in two months, (R. 22, 580), but he did not return for treatment until October 2017, seven months after the date last insured.  (R. 548-51, 560-64).  Moreover, at the March 2017 visit, various medications (Clonidine, Zoloft, and Tegretol) were

discontinued due to Plaintiff's non-compliance.  (R. 22, 580).

Furthermore, in addition to Plaintiff's treatment history, the ALJ considered the opinions of the State Agency consultants who reviewed Plaintiff's medical records. (R. 22-23). The physical consultant opined that Plaintiff could perform light work without any nonexertional physical restrictions.  (R. 22, 90-93).  The psychological consultant, in turn, opined that Plaintiff could understand, retain, and carry out simple (and most complex) instructions; consistently and usefully perform routine tasks on a sustained basis, with minimal (normal) supervision; cooperate effectively with the public and coworkers in completing simple tasks and transactions; and adjust to the mental demands of most new task settings.  (R. 22, 93). Except with regard to "complex" instructions (which the ALJ did not adopt), the ALJ found these opinions "generally persuasive" because "they were consistent with and supported by the relevant medical evidence . . . through the date last insured."  (R. 23).

Plaintiff does not challenge the ALJ's assessment of these medical opinions.  *See generally* (ECF Nos. 28-1, 31).  Moreover, in light of the record as a whole, the ALJ's evaluation of the opinions of the physical and psychological consultants is supported by substantial evidence.  The doctors reviewed the record evidence for the relevant period and adequately explained their conclusions.  *See generally* (R. 64-78) (initial); (R. 80-96) (reconsideration); *see also, T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin.,* 553 F. App'x 914, 917-18 (11th Cir. 2014) (concluding that the ALJ properly gave substantial weight to the opinion of a non-examining source because the doctor provided supporting explanation for the opinion and it was supported by the record); *Key v. Comm'r of Soc. Sec.*, No. 12-CV-415-OC-18PRL, 2013 WL 4774768, at *9 (M.D. Fla. Sept. 4, 2013) (finding no error in the ALJ's reliance on the testimony of a non-examining medical expert who reviewed the entire record

and opined on claimant's limitations); *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (affirming the ALJ's decision to give more weight to the opinion of non-examining doctor); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873-74 (11th Cir. 2011) (holding that the ALJ did not err in relying on the reports of non-examining physicians "because their opinions were supported by the record"); *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (holding that substantial evidence supported the ALJ's decision to assign great weight to non-examining physicians' opinions that "were supported by and consistent with the record as a whole").

Lastly, the ALJ considered Plaintiff's activities of daily living, which included watching TV and movies, playing video games, caring for himself, doing light housework and laundry, feeding and walking the pets, shopping with his wife, and interacting with others on an occasional basis.[5] (R. 19, 23); *see* (R. 217-24) (Plaintiff's Adult Function Report) and (R. 235-42) (Third Party (wife) Adult Function Report); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ may consider claimant's daily activities in evaluating the intensity and persistence of claimant's symptoms); *Schader v. Saul*, No. 19-CV-62805, 2021 WL 1520647, at *15 (S.D. Fla. Feb. 18, 2021) (ALJ may consider a claimant's daily activities, among other evidence, in determining whether a claimant is disabled); *Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider a claimant's daily activities when evaluating her subjective complaints and determining RFC).

Here, the ALJ accurately summarized the medical record and provided ample reasons, supported by the record, to support her RFC assessment. Thus, substantial evidence supports

---

[5] Plaintiff argues that the ALJ erred in considering Plaintiff's activities of daily living in evaluating Plaintiff's credibility. (ECF No. 28-1 at 19). This argument will be addressed in Section V.B. below.

the ALJ's RFC determination and the ALJ applied the proper legal standards.

2.  *The ALJ's Hypothetical Was Proper*

Relatedly, Plaintiff argues that the ALJ's hypotheticals to the VE were incomplete because she did not include limitations to account for Plaintiff's inability to work "without excessive absences" due to "extended [in-patient] stays at Faith Farm and Calvary House, as well as the psychiatric admission at the [JGC] and St. Mary's INH" or the fluctuating nature of his symptoms.  (ECF No. 28-1 at 14-18).  According to Plaintiff, in evaluating chronic mental illnesses, the ALJ is required to consider "all of the evidence on a longitudinal basis," "even if that includes events before the [alleged onset date] and after the [date last insured]."  (R. 16-17).  Plaintiff argues that "it would not be acceptable for the ALJ to simply dismiss the medical records from [before the alleged onset date] and [after the date last insured] . . . solely based on the point in time when the treatment occurred."  (R. 17).  Plaintiff's argument is unpersuasive.

First, although the relevant period for Plaintiff's DIB claim is "narrow" (i.e., between the August 2016 alleged onset date and March 2017 date last insured), the ALJ's Decision reflects the ALJ's consideration of the entire record, including events before the alleged onset date and after the date last insured.  (R. 17) (ALJ's statement that she carefully considered the entire record.  As the ALJ explained, prior to Plaintiff's August 2016 onset date, the record "showed an absence of any treatment for any impairment for several years prior to the alleged onset date and no evidence in the year prior."  (R. 21).  As well, the ALJ noted that "[e]xams with other providers similarly showed that [Plaintiff] was alert and oriented x 3 with no impairment of recent or remote memory (Ex. 7F/6).  Moreover, the claimant demonstrated the ability to provide information (to medical sources as well as at the hearing), e.g., with regard to describing work history/activity, answering questions, and providing explanations."  (R. 18-

19).  For example, Exhibit 7F, to which the ALJ cited, contains Plaintiff's medical records from

February 2017 to August 2017 from Gastro Group of the Palm Beaches.  (R. 488-505).  These

records reflect Plaintiff's consistent and repeated denial of psychiatric symptoms.[6]  *See e.g.*,

(R. 492-94) (2/13/17 treatment note reflecting that Plaintiff was alert and oriented, with no

impairment of recent or remote memory, and denied psychiatric symptoms); (R. 488, 490-91)

(4/10/17 and 6/1/17 treatment notes reflecting that Plaintiff was cooperative, in no acute

distress, and denied psychiatric symptoms); (R. 506-07) (8/29/17 treatment note reflecting

normal attention span and concentration, normal ability to name objects and repeat phrases, and

appropriate fund of knowledge); *see also* (R. 606, 610, 614, 618) (Ex. 13F) (Palm Beach

Neurosurgery LLC treatment notes between July 2017 and January 2018 reflecting that Plaintiff

was well-developed, in no acute distress, with normal speech, and consistently denied

psychiatric symptoms); (R. 975-76, 980-81, 985-86, 990-91, 994-95, 998-99) (Ex. 28F) (Palm

Beach Neurosurgery treatment notes between March 2018 and February 2019 similarly

reflecting that Plaintiff was well-developed, in no acute distress, with normal speech, and

denied psychiatric symptoms).

As well, the ALJ considered evidence from after Plaintiff's date last insured.  For

example, the ALJ reviewed and discussed JGC treatment notes from October 2017 and

December 2017.  (R. 22); *see* also (R. 567, 576) (10/25/17 and 12/13/17 JGC treatment notes).

---

[6] For completeness and context, the undersigned also reviewed treatment notes from Resolute
Pain Solutions, where Plaintiff was treated between July 2017 and October 2019 for neck and
lower back pain.  (Exs. 21F, 22F, 27F, and 35F).  Notably, during this more than two-year
treatment span, Plaintiff consistently exhibited normal mental status examination results.  *See,
e.g.*, (R. 759, 763, 767, 771-72, 775, 779, 783-84, 789, 795, 801, 810, 925, 929, 935-36, 939,
944, 950, 954-55, 960-61, 966, 1119-20, 1127-28, 1131) (generally reflecting that Plaintiff was
alert and fully oriented to time, place and person, with normal mental status, normal cognitive
function, good insight and judgment, good eye contact, and was cooperative, with clear speech).

Furthermore, during the hearing, the ALJ noted her familiarity with Plaintiff's 2015 mental health records from Faith Farm and 2018 admission to Calvary House.   (R. 43-44). Nonetheless, the ALJ correctly concluded that Plaintiff's DIB claim was limited by the date last insured and "any mention of evidence outside of the period at issue is purely for reference or context."  (R. 21).

Second, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  *Burnham v. Berryhill*, No. 16-CV-63013, 2018 WL 1709714, at *12 (S.D. Fla. Mar. 7, 2018); *see also Crawford*, 363 F.3d at 1161 (noting that the ALJ was not required to include findings in the hypothetical that were properly rejected as unsupported); *see also Denomme* v. *Comm'r, Soc. Sec. Admin*., 518 F. App'x 875, 879 (11th Cir. 2013) (citations omitted) ("[A]n ALJ is not required to instruct the VE to assume conditions that he does not find exist); *Norman*, v. *Comm'r of Soc. Sec.*, No. 14-CV-1498-T-30MAP, 2015 WL 4397150, at *8 (M.D. Fla. July 16, 2015) (noting that the ALJ submits to the expert only those limitations supported by the objective evidence of record).  Moreover, the hypothetical need only include "'the claimant's impairments,' not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citations omitted).  Where, as here, the hypothetical to the VE incorporates a properly determined RFC that is supported by substantial evidence, the hypothetical is proper.  *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 894-95 (11th Cir. 2011); *see Bryan v. Saul*, No. 19-CV-63164, 2021 WL 707594, at *10 (S.D. Fla. Feb. 6, 2021) (noting that the ALJ was not required to discuss every piece of evidence in the record, as long as the ALJ's decision was not a broad rejection of the claimant's condition as a whole) (citations omitted).

Lastly, Plaintiff argues that the ALJ's hypotheticals failed to account for the fluctuating

nature of Plaintiff's mental health status, with "everyday being different." (ECF Nos. 28-1 at 15-16, 31 at 2-3). In support, Plaintiff relies on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019) and *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021), both cases discussing the fluctuating nature of mental health disorders. (ECF No. 31 at 2). However, these cases are factually distinguishable from the instant case. In *Schink*, for example, the ALJ found that the claimant's bipolar disorder was not a severe impairment and the RFC did not "include even a single finding about Schink's mental capacities." *Schink*, 935 F.3d at 1269. Here, in contrast, the ALJ thoroughly discussed Plaintiff's mental health records and found that Plaintiff's bipolar disorder was a severe impairment. (R. 17-23). Thereafter, in assessing Plaintiff's RFC, the ALJ accounted for Plaintiff's mental impairment by limiting Plaintiff to "simple routine repetitive tasks, with only occasional interaction with coworkers and supervisors, and only occasional interaction with the general public." *Id.* at 20. These restrictions adequately address Plaintiff's mental impairment.

*Simon* is similarly distinguishable. In *Simon*, the Eleventh Circuit criticized the lower court's analysis of a claimant's mental health record for failing to discuss significant clinical findings, including the claimant's panic attacks, racing thoughts, mood swings, anger outbursts, memory problems, paranoia, and isolation. *Simon*, 7 F.4th at 1106. The Court noted that "[t]his complete failure to engage with significant portions of [the doctor's] clinical findings, which verges on a blatant mischaracterization of [claimant's] medical records, was error." *Id*. Here, however, the ALJ's Decision reflects her fulsome consideration of Plaintiff's mental health history, including medical opinions, adult function reports, and treatment records (both before the alleged onset date and beyond the date last insured "for reference or context"). *See* (R. 17-23). Lastly, and importantly, Plaintiff's DIB claim is necessarily limited to the "very narrow

17

period of consideration" between his alleged onset date (August 2016) through the date last insured (March 2017).  (R. 21).

In sum, Plaintiff's challenge to the ALJ's RFC assessment and hypothetical is an invitation for this Court to reweigh the evidence, which the undersigned declines.  While Plaintiff may disagree with the ALJ's conclusion, the ALJ's Decision will not be overturned if supported by substantial evidence.  *See Bloodsworth,* 703 F.2d at 1239; *Bonanno v. Berryhill*, No. 18-CV-21513, 2019 WL 498744, at * 2 (S.D. Fla. Feb. 8, 2019) (noting that when the ALJ's decision is supported by substantial evidence, the court must defer to it even though some evidence may preponderate against it) (citing *Crawford*, 363 F.3d at 1158-59 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.")); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings.").  A court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel*, 631 F.3d at 1178 (citation omitted).  The undersigned has "scrutinize[d] the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *MacGregor*, 786 F.2d at 1053 (citation omitted).  Having done so, the undersigned finds that substantial evidence supports the ALJ' RFC assessment and resulting hypotheticals to the VE, and that the ALJ applied the proper legal standards.

**B.      The ALJ Properly Evaluated Plaintiff's Subjective Complaints**

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (ECF No. 28-1 at

18-21); *see* (R. 21).  A claimant's statements about his symptoms, unsupported by the medical record, will not establish disability.  *See* 20 C.F.R. § 404.1529(a); *see also Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  Thus, when a claimant attempts to show disability through his own testimony about pain or other subjective symptoms, the ALJ must follow a two-step process.  "Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p, 82 Fed. Reg. 49463-64 (Oct. 25, 2017)).  "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit [his] ability to perform work-related activities."  *Id*. at 703-04 (citing SSR 16-3p, 82 Fed. Reg. at 49464-66); *see also* 20 C.F.R. § 404.1529(c), (d).

In conducting this two-step inquiry, an ALJ considers all the evidence, including "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [his] symptoms affect [him]."  20 C.F.R. § 404.1529(c)(2)-(4).  On review of the ALJ's decision, the question is not "whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec*., 421 F. App'x 935, 939 (11th Cir. 2011).  Moreover, when evaluating a claimant's statements regarding his symptoms, the ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence.  *See* 20 C.F.R. § 404.1529(c)(3), (4).  Although the ALJ is not required to conduct a symptom

analysis, the ALJ must clearly articulate her reasoning.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."); *see also Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987) (holding that ALJ is not required to use particular formulations or phrases as long as a court can determine whether the ALJ considered Plaintiff's entire medical condition under proper regulatory and statutory requirements).

Here, the ALJ's Decision provides abundant support for her credibility determination. The ALJ reviewed the record and concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record.  (R. 21).  To support her conclusion, the ALJ noted: (i) "[the] absence of any treatment for any impairment for several years prior to the alleged onset date and no evidence in the year prior;" (ii) the short-term and sporadic visits to JGC during the disability period (between August 2016 and March 2017), punctuated by Plaintiff's non-compliance with medications and failure to appear for follow-up office visits; (iii) the opinions of the State Agency consultants regarding Plaintiff's moderate mental limitations; and (iv) Plaintiff's activities of daily living.[7]  (R. 21-23).  A review of the record confirms the accuracy of the ALJ's summary.  *See* (R. 21-23, 90-93, 235-42, 580, 584, 587, 595).

The ALJ also considered: (i) Plaintiff's September 2016 Discharge Summary from JGC reflecting that Plaintiff had not taken antidepressant medications for the past two years and had been self-medicating with vodka and heroin (R. 21, 597); (ii) JGC treatment notes from March 2017 and October 2017 reflecting Plaintiff's failure to return for scheduled follow-up visits (R. 22, 576, 580); and (iii) March 2017 JGC treatment note indicating that Plaintiff was not

---

[7] These considerations equally support the ALJ's RFC determination, as more fully discussed in Section V.A.1, *supra.*

taking prescribed medications.  (R. 22, 580). Thus, the ALJ clearly articulated sufficient reasons for discounting Plaintiff's statements.

After discussing the relevant evidence, the ALJ concluded:

> Accordingly, the claimant's subjective complaints and limitations appear disproportionately high in comparison to the objective medical evidence and other substantial evidence in the record.  Moreover, there was *clear evidence of secondary motives* and a lack of genuine treatment, by recent history and during the period at issue, e.g., with the claimant specifically asking for documentation in support of his disability from JGC [in 2018] without establishing longitudinal treatment at the time of the request (Ex. 12F/32), *complicated by a criminal history with prison time* (Ex. 1F). The claim for disability was also inconsistent with a reference to work activities in 2017 (Ex. 13F/13), with no documented/reported income for that year (Ex. 3D, last reported in 2016).

(R. 23) (emphasis added).

Without citation to any supporting case law, Plaintiff generally challenges the ALJ's reference to "secondary motives" and complications due to "a criminal history with prison time."  (ECF No. 28-1 at 19-21); *see also* (R. 23).  But the undersigned need not address Plaintiff's summary argument regarding these considerations, as they were simply not the primary basis for the ALJ's Decision.[8]  Rather, as discussed above, the primary basis for the ALJ's decision to discount Plaintiff's statements was the lack of supporting record evidence, such as objective findings, medical opinions, treatment history, and activities of daily living.  *See Vason v. Astrue*, No. 09-CV-912-TFM, 2010 WL 2629444, at *5 (M.D. Ala. June 30, 2010)

---

[8] In any event, other courts have found that a claimant's "extensive criminal record" can "properly be taken into consideration by [an] ALJ in evaluating the credibility of subjective complaints."  *See, e.g., Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012); *see also Wimberly v. Colvin*, No. 12-CV-1427-T-17TGW, 2013 WL 3322675, at *9-10 (M.D. Fla. July 1, 2013) (finding ALJ's credibility determination, which included, among other things, consideration of claimant's criminal history of grand theft, sufficient to discount plaintiff's complaints of incapacitating symptoms).

(concluding that ALJ did not err in discounting claimant's testimony where conflicts existed within her testimony and between her testimony and the record).  Consequently, omitting the conclusion paragraph from consideration does not materially affect the ALJ's credibility determination.  Thus, any error is harmless because the ALJ clearly set forth ample reasons, supported by substantial evidence, for discounting Plaintiff's statements.  *See Berg v. Saul*, No. 19-CV-60521, 2020 WL 1237044, at *9 (S.D. Fla. Feb. 27, 2020), *report and recommendation adopted,* 2020 WL 1235998 (S.D. Fla. Mar. 13, 2020) (finding error harmless when it would not have affected the ALJ's ultimate determination); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (errors may be harmless if they do not prejudice the claimant).

Lastly, credibility determinations are the province of the ALJ, and a clearly articulated credibility finding with substantial supporting record evidence will not be disturbed.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Foote*, 67 F.3d at 1562; *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (noting that the ALJ provided sufficiently explicit and adequate reasons to partially discount claimant's testimony); *see also, Pettaway v. Astrue*, 376 F. App'x 889, 890 (11th Cir. 2010) (finding no reversible error where ALJ provided specific reasons for discrediting claimant's testimony); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (finding reversible error where court disturbed an ALJ's adequately explained determination regarding claimant's subjective complaints).  Against this backdrop, the undersigned finds that the ALJ applied the proper legal standards and substantial evidence supports the ALJ's articulated reasons for discounting Plaintiff's allegations of disabling symptoms.

## VI.     <u>RECOMMENDATION</u>

Accordingly, for the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 28-1) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 29) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

**Within seven (7) days** after being served with this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2021); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on February 24, 2022.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
      All Counsel of Record